*Robert LARGO*
Plaintiff-Appellant
*vs.*
*EATON Corporation and Cutler-Hammer, Inc.*
Defendants-Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-09-99

April 11, 2001

Daniel M. Rosenfelt, Esq., Albuquerque, New Mexico, for Appellant.

Casey Watchman, Esq., Crownpoint, Navajo Nation (New Mexico), and Harry T. Quick, Esq., Cleveland, Ohio, for Appellees.

Before YAZZIE, Chief Justice, and AUSTIN and SLOAN, Associate Justices.

Opinion delivered by Austin, Associate Justice.

In this personal injury action, the Crownpoint District Court dismissed Robert Largo's lawsuit against third-parties by holding that 15 N.N.C. 1032(B) (1978) of the Navajo Nation Workers' Compensation Act contained a one-year statute of limitations that barred the suit. We affirm the dismissal, but on different grounds.

I

The Plaintiff-Appellant, Robert Largo ("Largo"), was injured on January 10, 1996, at a Conoco well site in Crownpoint, Navajo Nation (New Mexico) . Largo, an employee of the Navajo Tribal Utility Authority, had attempted to repair an electrical switch when he was injured. Largo contends that a rod within the switching box broke, preventing the voltage from being disconnected, and, consequently, he suffered "severe thermal electrical burns." Largo filed a claim and received workers' compensation benefits from the Navajo Nation

Workers' Compensation Program. Largo also had an option to sue the alleged third-party tortfeasors in court within a year of his injury; otherwise, the law would assign his claims to the Navajo Nation. 15 N.N.C. § 1032(B). One year after the accident, Largo had not yet brought suit against the Defendants-Appellees, Eaton Corporation and Cutler-Hammer, Inc. (collectively "Appellees"), therefore, section 1032(B) assigned his personal injury claims to the Navajo Nation.

On January 8, 1998, two days short of two years from the date of the accident, Largo filed this lawsuit against the Appellees, the foreign corporations that had manufactured the electrical switch, seeking damages for personal injury, pain and suffering, emotional distress, and other claims. On December 7, 1998, eleven months after the statute of limitations had run on the claims, a Navajo Nation Department of Justice attorney reassigned to Largo the claims that had passed to the Navajo Nation. The Appellees moved to dismiss the complaint contending that 15 N.N.C. §1032(B) contained a one-year statute of limitations which barred Largo's lawsuit. The district court granted the motion on two grounds. First, section 1032(B) contained an applicable one-year statute of limitations that barred Largo's suit; and second, the Navajo Nation could not reassign its right to sue to Largo, and even if such a right existed, Largo could only recover the amount of workers' compensation benefits paid to him. Largo appeals these rulings.

## II

The Navajo Nation Workers' Compensation Program provides a procedure for the fair and orderly resolution of injury claims. A worker may bring an action in court against a third-party for a covered injury without compromising receipt of workers' compensation benefits. 15 N.N.C. §1032(A) (1978). Largo received workers' compensation benefits and filed a lawsuit against the alleged tortfeasors, but the district court dismissed his complaint. Largo contends the district court wrongly construed section 1032(B), therefore, its dismissal of his complaint was error.

This appeal brings out the following questions: (1) Does section 1032(B) contain a one-year statute of limitations; (2) Can the Navajo Nation reassign a claim to the injured worker; 3) What interest does an injured worker retain in a claim after the section 1032(B) assignment to the Navajo Nation; and (4) Can an injured worker sue a third-party tortfeasor while the Navajo Nation still has control of the claim. The answers to these issues require interpreting the following section:

> If the employee entitled to compensation under this chapter or his dependents do not pursue his or their remedy against such other person by instituting an action within one year after the cause of action accrues, the claim against such other person shall be deemed assigned to the Navajo Nation. Such a claim so assigned may be prosecuted or compromised by the Navajo Nation for benefits paid. 15 N.N.C. §1032(B).

## A

The district court held that section 1032(B) contains a one-year statute of limitations. Because Largo did not bring his lawsuit within a year of his injury, the court dismissed his complaint. The district court erred in its interpretation of the statute. The court's ruling elevated a rule of assignment to the level of a limitations statute without sound support.

The Navajo Nation, at 7 N.N.C. § 602(a) (1) (1982), provides for a two-year statute of limitations for personal injury actions. That statute regulates the time period for filing a personal injury action, such as the one Largo brought, and it is conclusive in the absence of an explicit, contravening statute. The Appellees did not present anything to this Court to suggest that the Navajo Nation Council either wanted section 1032(B) to be a limitations statute or to serve as an exception to section 602(a) (1). The two statutes have different functions. Section 1032(B) is an assignment statute. Its function is to assign an individual's claim to the Navajo Nation, while section 602(a) (l) controls the time period for bringing a personal injury action. Thus, section 1032(B) is not a statute of limitations and our courts cannot use it to bar an injured worker's suit.

The one-year provision in section 1032(B) restrains the worker's right to bring a lawsuit against a third-party tortfeasor. However, as will be discussed below, even this limitation can be surmounted by joining the Navajo Nation as the real party in interest. After one year, section 1032(B) assigns the worker's right to sue to the Navajo Nation, but the tortfeasor's liability to the injured party is not extinguished by the statutory assignment. Thus, the Navajo Nation can sue the tortfeasor, recover damages, deduct its lien, and release the remainder to the injured worker. This construction does not prejudice the tortfeasor because the general statute of limitations at section 602(a) (1) still controls the time for bringing a personal injury action. Likewise, the Navajo Nation's right to sue the third-party tortfeasor is not limited by allowing the injured party to retain an interest in the claim after one year.

## B

Nearly a year after the statute of limitations had run on the claims, an attorney for the Navajo Nation reassigned the claims to Largo.[1] The district court did not approve of the reassignment. It ruled that section 1032(B) did not authorize reassignment, thereby nullifying the Navajo Nation's reassignment to Largo. While section 1032(B) does not expressly permit the Navajo Nation to reassign a claim to the injured worker, we believe that sound public policy demands that personal injury suits be brought by the injured parties themselves. This preference is expressed in the general rule that injured parties cannot assign

[1] The district court doubted that an attorney from the Navajo Nation Department of Justice would have the authority to reassign a claim to an injured worker without approval by an oversight committee of the Navajo Nation Council or other appropriate Navajo Nation official. That issue was not briefed and is better left for another day. For purposes of this opinion, we treat the attorney's reassignment as proper.

away their personal injury claims. *See e.g., Saper v. Delgado*, 146 F.2d 714 (2nd Cir. 1945) (holding that a right of action for personal injuries resulting from negligence cannot be assigned absent statutory law).

The stated public policy is in accord with Navajo common law principles. In the case of *In re Claim of Ray Joe Jr.*, we identified a Navajo common law principle that applies here: "If a Navajo was injured by the act of another, the victim could demand *nályééh*, which is a form of compensation or reparation." 7 Nav. R. 66, 69 (Nav. Sup. Ct. 1993). This means the injured person has a personal right to seek *nályééh* for physical injuries contracted. It is only logical that the injured person would know how the injuries have affected his or her life, family and finances. The Navajo Nation government, in comparison, cannot be said to have experienced the injured person's pain. The tortfeasor has a reciprocal obligation under Navajo common law: "The tortfeasor and his or her relatives are expected to set things right in accordance with the hurt." *Benalli v. First Nat'l Ins. Co. of America*, 7 Nav. R. 329, 338 (Nav. Sup. Ct. 1998). Thus, a person injured by a tortfeasor is entitled under Navajo common law principles to compensation for his or her injuries and should not be stripped of that right prematurely.

While section 1032(B) does not expressly state that the Navajo Nation may reassign a claim to an injured worker, we find that Navajo Nation public policy and Navajo common principles require reassignment of a claim. Between the two potential plaintiffs, the injured worker has the greatest interest in the claim, while the Navajo Nation's lesser interest extends only to recouping the amount it paid out in benefits. Accordingly, we hold that section 1032(B) permits the Navajo Nation to reassign a claim to an injured worker.

The State of Arizona has a statute nearly identical to ours, A.R.S. § 23-1023 (B), except that the Arizona statute expressly permits an entire claim to be reassigned to a worker. The reassignment part was inserted into the Arizona statute in 1981 in response to an Arizona Supreme Court ruling that the statute did not permit a reassignment. *See Ross v. Superior Court*, 128 Ariz. 301, 625 P.2d 890 (1981). The Navajo Nation counterpart was enacted in 1978. The amendment to the Arizona statute clarified that assignments by law were not intended to benefit third-party tortfeasors and should not be used to protect them from liability. *See Smith v. Payne*, 156 Ariz. 506, 753 P.2d 1162 (1988). Apparently, the earlier Arizona statute, although not explicit, was intended to allow for a reassignment, which is shown by the fact that the legislature immediately amended the statute to expressly include reassignments after the Ross decision. *See* Smith, 753 P.2d at 1164.

The fact that Largo retains an interest in recovery does not limit the Navajo Nation's right to recover from the tortfeasors. The assignment activates the Navajo Nation's right to sue, and the injured worker cannot impede on this right. We stress, however, that the injured worker does not lose his interest in the damages recovered from the tortfeasor after one year, and the Navajo Nation may return the right to sue to the injured worker.

## C

The district court ruled that after section 1032(B) assigns a claim to the Navajo Nation, the party who sues can recover from the tortfeasor only the amount of benefits paid to the worker. The district court used the final sentence in section 1032(B) to draw its conclusion. It states: "Such a claim so assigned [to the Navajo Nation] may be prosecuted or compromised by the Navajo Nation for benefits paid."

If the district court's ruling were upheld, and a claim was reassigned to an injured worker, the worker's "damages would be limited to the amount paid as workers' compensation benefits," and the worker would have to release that to the Navajo Nation. *Largo v. Eaton Corp.*, No. CP-CV-53-98, Decision at 2 (Crwn. Dist. Ct., March 4, 1999). Similarly, if the Navajo Nation were to bring a lawsuit, it would prosecute its claim only for "benefits [it] paid," *id.*, because, according to the Appellees, the assignment extinguishes the remainder of the worker's claim.

While the Appellees correctly assert that Largo's entire claim was assigned to the Navajo Nation, that assignment did not extinguish any portion of his claim, nor should the Navajo Nation be limited to bringing a lawsuit only for its lien. As to the injured worker, a reassignment that is limited to recovering for benefits paid would in essence leave the injured party with nothing to sue for because he would have already been paid in workers' compensation benefits.

An assignment is defined as transferring "a complete and present right in the subject matter to the assignee." 6 Am. Jur. 2d Assignments § 1 (1999). Regarding the assignment of a workers' compensation claim, the injured worker's right to independently sue the tortfeasor is limited. The assignment carries with it the right to sue and recover against the tortfeasor. Once the claim is assigned to the Navajo Nation, any recovery the injured worker receives must come through either a Navajo Nation reassignment (giving the party the right to sue again), or through a judgment for the Navajo Nation subject to its lien.

In other words, if the Navajo Nation sues the tortfeasor and recovers damages, it will withhold only that amount equal to the benefits it paid to the injured worker. The rest of the award is vested in the injured worker and must be paid to that party. If the Navajo Nation reassigns the claim, the reassignment gives the right to sue back to the injured worker. Should the worker recover damages, he is entitled to retain the amount in excess of the Navajo Nation's lien. This prevents double recovery for the injured worker. The assignment is part of a statutory scheme that requires tortfeasors to pay damages to those injured by their wrongs, that reimburses employers/carriers for their compensation liability, and that allows injured employees to receive the excess of the damage recovery over compensation but eliminates any double recovery. (citation omitted). *Moretto v. Samaritan Health System*, 190 Ariz. 343, 947 P.2d 917, 922 (Ariz. App. 1997).

We realize that section 1032(B) does not expressly state what happens to the worker's interest in recovery beyond the amount of benefits paid, such as claims

for pain and suffering and emotional distress. We again tap the Navajo common law principle of *nályééh* to conclude that the injured worker keeps an interest in such claims for the duration of the statute of limitations. *Nályééh* is "a paying ... of restitution."

*In re: Estate of Benally v. Navajo Nation*, 5 Nav. R. 209, 212 (W. R. Dist. Ct. 1986). It is a form of just compensation paid to an injured party and is determined by the nature of the injury and the ability of the wrongdoer to restore the injured party. As this case illustrates, a worker would need to file a formal action against a corporate defendant to realize *nályééh*.

The *nályééh* principle gives the injured worker a right to retain an interest in recovery against a tortfeasor. Largo's right to *nályééh* is his right to recover for the additional injuries that were not covered by the workers' compensation benefits. The tortfeasor who is liable for the injured worker's injuries and who is in a position to pay for the injuries remains liable to the injured worker even after the worker's claim passes to the Navajo Nation. A worker could not be justly compensated for injuries if his or her interest in recovery disappeared once the Navajo Nation took control of the claim; this would contradict the *nályééh* principle.

D

The final question posed concerns the procedure the injured worker may use to file a lawsuit against a third-party tortfeasor after the statutory assignment to the Navajo Nation. Once section 1032(B) activates the assignment, the claim is under the Navajo Nation's control. At this point, the injured worker's right to sue a third-party tortfeasor is restrained, although the Navajo Nation is not under such restraint. The Navajo Nation, however, need not initiate the lawsuit. The injured worker should not have to wait for the Navajo Nation to take action against the tortfeasor in order to recover. If the injured worker were forced to wait, the claim may lie dormant and the statute of limitations could run out on the worker's remaining interest.

We hold that an injured worker may initiate a lawsuit against a third-party tortfeasor after the claim has been assigned, as long as the worker files the lawsuit and joins the Navajo Nation, as the real party in interest, before the statute of limitations expires. Such a procedure is allowed by Rule 17(a), Navajo Rules of Civil Procedure, which provides in pertinent part:

> No action shall be dismissed because it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action has been commenced in the name of the real party in interest.

A party must have standing to bring a suit in court. The injured worker must

join the Navajo Nation to the action to gain standing. Rule 17(a) allows for an injured party to bring a lawsuit and then join the real party in interest to that suit. The claim will not be dismissed simply because it was not filed in the name of the real party in interest.

The injured worker must file the lawsuit and join the Navajo Nation before the statute of limitations runs out. In doing so, the injured worker preserves the Navajo Nation's standing against the statute of limitations and the Navajo Nation can then reassign the claim to the worker, thus giving the worker standing to pursue the claim. The reassignment can take place at any time after the Navajo Nation is joined.

In this case, Largo brought his claims against the Appellees after the Navajo Nation controlled it, but made no attempt to join the Navajo Nation as the real party in interest to the lawsuit. Thus, Largo did not cure his lack of standing in court. After the statute of limitations ran, the district court was left with a plaintiff without standing to bring his action. The only option for the district court under this circumstance was to dismiss the lawsuit.

Largo should have used Rule 17(a) to join the Navajo Nation as the real party in interest to have maintained a valid claim. If the Navajo Nation had been joined, it would have either pursued the claims on its own, or simply reassigned them to Largo. In this case, Largo obtained the reassignment after the statute of limitations had run on the claims and without joining the Navajo Nation to the lawsuit. Even if the Navajo Nation had intended to reassign at this point, the complaint would still be statutorily barred. In other words, the reassignment was meaningless, because the Navajo Nation itself was statutorily barred from filing a lawsuit on the claims.

### III

Section 1032(B) was amended in 1997. Navajo Nation Council Res. No. Co-83-97 (October 22, 1997). The amendments do not affect the ruling in this case because the injury here happened in 1996. The only substantive change made to section 1032(B) is that the statute now expressly states that a claim is in the "control" of the Navajo Nation once it has been assigned the claim. This opinion recognizes that the Navajo Nation maintains control of the claim, but even such control would not limit or terminate an injured worker's interest in the claim.

### IV

For the foregoing reasons, the decision of the Crownpoint District Court dismissing the complaint is affirmed.